WESTERN UNION TELEGRAPH CO. v. FREAR, Secretary of State.

PHILADELPHIA & READING COAL & IRON CO. v. DONALD, Secretary of State, et al.

(District Court, W. D. Wisconsin.   August 10, 1914.)

1. CORPORATIONS (§§ 636, 651*)—FOREIGN CORPORATIONS—LOCAL BUSINESS—REGULATION.

So far as local business is concerned, a state may impose any conditions, not in conflict with the Constitution and laws of the United States, on the right of a foreign corporation to do business within its territory, or, having given a license authorizing the corporation to do business within the state, may revoke the same with or without cause.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2505–2509, 2571, 2574, 2575; Dec. Dig. §§ 636, 651.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CORPORATIONS (§ 636*)—FOREIGN CORPORATIONS—DISCRIMINATION.

An attempt by a state to substantially discriminate between domestic corporations and foreign corporations admitted to do business within the state, prejudicially to the latter, is invalid, and may be restrained, whether it be by unequal taxation or other substantial inequality.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2505–2509, 2571; Dec. Dig. § 636.*]

3. REMOVAL OF CAUSES (§ 3*)—AGREEMENT NOT TO REMOVE SUITS—FOREIGN CORPORATIONS—DOING BUSINESS WITHIN STATE.

A state statute requiring a foreign corporation, as a condition of being permitted to enter or remain in the state, to stipulate expressly or impliedly that it will not exercise its constitutional right to remove suits to the federal courts or prosecute suits therein is invalid as requiring a corporation to forego a constitutional right and the revocation of its license to do local business, for a violation of such statute may be restrained.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 4, 5; Dec. Dig. § 3.*]

4. CORPORATIONS (§ 636*)—FOREIGN CORPORATIONS—OCCUPATION TAX.

St. Wis. 1898, § 1770b, subd. 7, par. "e," added by Laws 1905, c. 506, requires foreign corporations to report annually the amount of business done in Wisconsin and pay $1 a thousand on any increase not previously reported. *Held*, that such tax is only a license fee payable on substantially the same terms as fees charged domestic corporations, and that the act is for that reason not discriminatory against foreign corporations.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2505–2509, 2571; Dec. Dig. § 636.*]

5. REMOVAL OF CAUSES (§ 3*)—STIPULATIONS TO NOT REMOVE CAUSE.

Wisconsin Statutes 1898, authorizing foreign corporations to do business within the state, declares as a condition that such a corporation shall state in its application and in its annual reports that it will comply with all the laws of the state relative to foreign corporations, and section 1770f, added by Laws 1905, c. 506, declares that, whenever any foreign corporation doing business in the state shall remove or make application to remove into any District Court of the United States any action or proceeding commenced against it by any citizen of the state on a claim or cause of action arising within the state, it shall be the duty of the Secretary of State, on such fact being made known to him, to revoke the corporation's license to do business in Wisconsin. *Held*, that such provision was in effect a prohibition against the exercise of a constitutional right, so as to be invalid.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 4, 5; Dec. Dig. § 3.*]

In Equity. Suit by the Western Union Telegraph Company against James A. Frear, as Secretary of State of Wisconsin, and by the Philadelphia & Reading Coal & Iron Company against John S. Donald, as such Secretary of State, and Walter C. Owen, as Attorney General, to restrain the enforcement of St. Wis. 1898, § 1770f, added by Laws 1905, c. 506. Decree for complainants.

A. G. Zimmerman and Rufus B. Smith, both of Madison, Wis., and Percy B. Eckhart, of Chicago, Ill., for Western Union Telegraph Co.

M. H. Boutelle, of Minneapolis, Minn., and Luse, Powell & Luse, of Superior, Wis., for Philadelphia & Reading Coal & Iron Co.

Walter C. Owen, Atty. Gen., and J. E. Messerschmidt, Asst. Atty. Gen., both of Madison, Wis., for defendants.

Before KOHLSAAT, Circuit Judge, and GEIGER and SANBORN, District Judges.

PER CURIAM.   Application for similar injunctions in both of these cases were heard together, under section 266 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [U. S. Comp. St. Supp. 1911, p. 236]), before Christian C. Kohlsaat, United States Circuit Judge, and Ferdinand A. Geiger and Arthur L. Sanborn, District Judges, November 24, 1913; preliminary injunctional orders having been previously entered in both cases, restraining the Secretary of State from revoking the respective licenses to do business in Wisconsin theretofore issued to complainants, respectively.

These corporations have always been rightfully in the state, because they are engaged in interstate and foreign commerce; the telegraph company being also a government agent under certain acts of Congress. They were lawfully in the state, engaged in such business, long before 1898, when the first statute was passed requiring foreign corporations to take out local licenses under penalty of being unable to make contracts relating to local business, or to acquire or dispose of title to property in such business.   As to other than local business they are lawfully in the state, since the statute referred to does not relate to interstate or foreign commerce transactions.   Elwell v. Adder Machine Co., 136 Wis. 82, 116 N. W. 882.

In 1905 the Wisconsin Legislature passed an act providing as follows:

"Sec. 1770f. Whenever any foreign corporation doing business in this state shall remove or make application to remove into any District or Circuit Court of the United States any action or proceeding commenced against it by any citizen of this state, upon any claim or cause of action arising within this state, it shall be the duty of the Secretary of State, upon such fact being made to appear to him, to revoke the license of such corporation to do business within this state." Laws 1905, c. 506.

Each of these corporations has removed to the federal court a case against it of the kind referred to in the statute.   The Secretary of State having threatened to revoke their licenses, these applications for temporary injunctions were made, and heard as already stated.

[1] So far as purely local business is concerned, the state has the right to impose conditions, not in conflict with the Constitution or the laws of the United States, to the transaction of business within its territory by an insurance company chartered by another state, or to exclude such company from its territory, or, having given a license, to revoke it, with or without cause.   Doyle v. Continental Insurance Co., 94 U. S. 535, 24 L. Ed. 148.

It is argued by counsel for the state that the mere revocation of the license of a foreign corporation doing both a local and interstate business will in no way affect its right to continue the transaction of business in interstate and foreign commerce.   If, however, it makes a contract or acquires property wholly in its local business, then it comes within the disabilities and penalties prescribed in section 1770b.

The Supreme Court of the United States has laid down certain rules in deciding cases similar to these, and, so far as that court has settled

the law, it is, of course, the duty of this court to apply it. The following propositions are established:

[2] 1. Any attempt to substantially discriminate between domestic corporations and foreign corporations admitted to do business in a state, prejudicial to the latter, is invalid, whether it be by unequal taxation or other substantial inequality. Under such circumstances, the cancellation of the foreign corporation license by a state officer will be restrained. Herndon v. Chicago, R. I. & P. R. Co., 218 U. S. 135, 30 Sup. Ct. 633, 54 L. Ed. 970, and Roach v. Atchison, T. & S. F. R. Co., 218 U. S. 159, 30 Sup. Ct. 639, 54 L. Ed. 978.

[3] 2. If the state statute requires the foreign corporation, as a condition of being permitted to enter or remain in the state, expressly or impliedly to stipulate or agree that it will not exercise its constitutional right to remove suits to the federal courts, or prosecute suits therein, such statute is invalid because requiring the corporation to give up a constitutional right; and the revocation of its license to do local business may be restrained. Home Ins. Co. v. Morse, 20 Wall. 445, 22 L. Ed. 365; Barron v. Burnside, 121 U. S. 186, 7 Sup. Ct. 931, 30 L. Ed. 915, 1 Interst. Com. Rep. 295; and other cases approving the Barron Case, cited by Mr. Justice Day in Security Mutual Ins. Co. v. Prewitt, 202 U. S. 246, 263, 26 Sup. Ct. 619, 50 L. Ed. 1013, 1020, 6 Ann. Cas. 317.

The rulings referred to seem decisive of this application, so that it is unnecessary to consider other points.

The only discrimination we are able to perceive in the Wisconsin law, in favor of domestic and against foreign corporations, is a very narrow one. Foreign corporations are not allowed to remove cases against them by citizens of Wisconsin, on causes of action there arising. The same rule applies to domestic corporations, under section 28 of the Federal Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1094 [U. S. Comp. St. Supp. 1911, p. 140]), which does not allow defendants to have removal for diverse citizenship unless they are nonresidents of the state. Hence domestic corporations cannot exercise such a right. If, however, the suit against the domestic corporation presents a federal question, and more than $3,000 is in dispute, it may remove the case, though a citizen and resident of the state, and though the plaintiff is a citizen of the same state and the cause of action arose therein. To this limited degree there is discrimination; but instances of such cases would be very rare. The question of the right to remain in the state may also be litigated by the foreign corporation in the state courts, with a final right of review in the Supreme Court by writ of error to the highest state court. It is unnecessary on these motions for injunctions to pass on this narrow question, because a consideration of the second point referred to seems to require the court to direct the temporary injunctions prayed.

[4] On first reading the Wisconsin statutes seem to discriminate against foreign corporations by exacting an occupation tax from which domestic bodies are exempt; but a careful consideration of the acts shows that this is not true. Paragraph "e" of subdivision 7 of section 1770b requires foreign companies to report annually the amount of

business done in Wisconsin, and to pay a dollar a thousand on any increase not previously reported. Domestic companies are not required to include in their annual reports any such facts, or make any such payment. But a complete and thorough comparison of the statutes demonstrates that this tax on business is really on the capital stock, and is not required to be paid unless the charter is amended so as to increase the capital locally employed beyond the amount already paid for. So the tax is only a license fee, payable on substantially the same terms as domestic fees. It is a well-known fact in Wisconsin that this is the construction adopted by the state officers, under which they have uniformly acted. The consistent policy in Wisconsin has been to encourage foreign corporations to do business in the state by making their status the same as that of domestic companies, but to prevent them from carrying on business there unless licensed, so as to collect from them taxes or license fees commensurate with those exacted from local bodies, and making them readily suable there. This policy of equality appears from the statute, and is emphasized by subdivision 10 of section 1770b, adopting from Illinois a provision that foreign corporations shall have no other or greater powers than like domestic bodies, and from the uniform construction of these statutes by the state officers. Provisions designed to prevent the removal of causes to federal courts, like that of section 1770f and the insurance statute under review in Doyle v. Continental Ins. Co., 94 U. S. 535, 24 L. Ed. 148, were found necessary by the unreasonable and oppressive conduct of the foreign corporations themselves in removing cases merely for greater delay, vexation, and expense. It used to be common practice in Wisconsin for foreign corporations under injunction from state courts to remove the case on a Saturday afternoon, thus ipso facto vacating the state injunction, and then hustle a gang of men upon the enjoined work and get it done by Monday, before any other restraining order could issue.

[5] The second point, resting on the Morse and Burnside Cases, raises the question whether the statute requires foreign companies, as a condition of coming in or staying in, to agree that they will not remove cases to the federal courts. If so, the legislation is invalid under those decisions. The statute provides that the foreign corporation, as a condition of doing business in the state, or continuing it, shall state in its application to come in, and its annual sworn reports, that it will comply with all the laws of the state relative to foreign corporations. One of these laws provides that, if the corporation shall avail itself of the right of removal, it shall lose its local license. The question is whether the company, thus compelled to state that it will comply with the local law, is in substance compelled to contract, as a condition of its admission or continued presence in the state, that it will not exercise its constitutional right of removal, but consent to litigate certain cases only in the state court. Counsel for the state officers urge that the corporation is required to stipulate only that it will comply with certain positive requirements, such as making annual reports, paying license fees when it amends its articles, and keeping out of trusts, pools, or combinations in restraint of trade. It is given the option, it is said, to remove or refrain

from removing. Whether it does one or the other, it is still complying with the Wisconsin law.

The question is whether section 1770f is substantially a command or prohibition to refrain from taking a removal. It is evident that such a stipulation in the ordinary private contract would not be a prohibition, but merely a condition. But contracts such as those here in question are not between citizens or subjects, but between a political superior and a subject—between the state as a local sovereignty and a citizen or subject of another state. The object of such statutes is public policy. The corporation cannot elect whether it will stay out, being practically coerced to come in by threatened loss of contract and property rights. The parties are by no means on equal terms. One is a sovereign, dictating what the subject, in these cases lawfully in the state for some purposes, shall do if it remains therein for other purposes closely related. So when the state enacts that, if the subject does something it has a perfect abstract right to do, it shall be punished, it is thereby substantially prohibited. The federal Penal Code of 1909 (Act March 4, 1909, c. 321, 35 Stat. 1088 [U. S. Comp. St. Supp. 1911, p. 1588]) contains very few express commands. Most of its sections provide that whoever shall do certain acts shall be punished. This is the same as enacting that these are unlawful and prohibited. No one would contend that these were not commands to refrain from those acts. They are prohibitions from a political superior to a subject, enacted for the public welfare. The state says to the telegraph company or coal company:

"You are in the state lawfully for interstate and government business. If, however, you do any other kind of business, you must have a local license. If you remove to a federal court any case, whether in your interstate or local business, brought against you by a citizen of Wisconsin on a cause of action arising therein, your license to do a local business will be revoked. Any contract not in interstate commerce you may thereafter make will be void in your favor but valid against you, and any conveyance of land for local purposes which you may take will not vest any title."

This is a substantial command or prohibition. It is the same as saying, "You shall not remove such a case."

In the Morse Case, 20 Wall. 445, 22 L. Ed. 365, there was an express stipulation not to remove actions against the company. But in the Burnside Case, 121 U. S. 186, 7 Sup. Ct. 931, 30 L. Ed. 915, 1 Interst. Com. Rep. 295, the prohibition was implied, as it is here. The application of the foreign corporation to be permitted to do business in Iowa was required to contain a stipulation "that said permit shall be subject to each of the provisions" of the foreign corporation statute. A removal to a federal court by the corporation was made a forfeiture of the permit. No application had ever been made by the company to be permitted to do business in the state, and one of its servants was arrested for running an interstate train in Iowa. The court said:

"The locomotive engineer is arrested for acting as such in the employment of the corporation, because it has refused to stipulate that it will not remove into the federal court suits brought against it in the state court, as a condition of obtaining a permit, and consequently has not obtained such permit. * * * As the Iowa statute makes the right to a permit dependent upon the surrender by the foreign corporation of a privilege secured to it by the

Constitution and laws of the United States, the statute requiring the permit must be held to be void."

This decision has been many times approved by the Supreme Court and Circuit Courts of Appeals. The citing cases are discussed by Mr. Justice Day in the dissenting opinion in the Prewitt Case, supra.

Being unable to distinguish these cases from the Burnside decision, the duty to grant the applications for a preliminary injunction is plain. The case of Harrison v. San Francisco Co., 232 U. S. 318, 34 Sup. Ct. 333, 58 L. Ed. 621, decided since the hearing, seems to strengthen our position.