Allen RINGGENBERG, d/b/a Ringgenberg Electric, Plaintiff,

v.

Melvin S. WILMSMEYER et al., Defendants,

George E. Tarver & Marjorie S. Tarver, Defendants, Appellants and Cross-Respondents,

Versa-Tech et al., Defendants, Respondents and Cross-Appellants.

Nos. 11769, 11855.

Supreme Court of South Dakota.

Argued Nov. 19, 1976.

Decided April 29, 1977.

Maloney, Kolker, Kolker & Fritz, Daniel R. Fritz, Aberdeen, for defendant-appellant.

King & King, Rory King, Aberdeen, for defendants, respondents and cross-appellants.

WINANS, Justice.*

This controversy involves the proper application of our mechanics' lien statutes, SDCL 44–9. Defendants George and Marjorie Tarver are owners as joint tenants of the old Gamble building in Aberdeen, South Dakota.[1] In October, 1973 they sold their interest in that property to defendant Melvin S. Wilmsmeyer, pursuant to a Contract for Deed. The contract was drawn by

---

\* In accordance with SDCL 16–1–5.

1. Lots 9 through 12, Block 9, Original Plat of the City of Aberdeen, Brown County, South Dakota.

George Tarver. It has never been recorded in the office of the Brown County Register of Deeds.

The Contract for Deed required a $15,-000.00 down payment and a further lump sum payment of $20,573.60 in January, 1974; both payments were made. Monthly installments on the remainder of the $175,-000.00 selling price were to commence November 1, 1973 and continue for 15 years [$1,338.40]. Although there was some difficulty with the payments, it was not until June, 1974 that payments ceased. By this time the Tarvers sensed that the vendee was in financial difficulty and accordingly declared the contract for deed to be in default.

Wilmsmeyer had occupied part of the first floor in the building since January, 1973 as a tenant. He conducted a furniture business under the name of The Carpet Pad [Wilmsmeyer Carpet, Inc.]. As the contract vendee in possession he sought to make various improvements in the building.

The Contract for Deed contained no language which in any way prohibited the making of those improvements. It did provide, however, that in case of default the vendee's interest in all improvements was to be forfeited to the vendor.

Among those solicited to make improvements was Versa-Tech, Inc., an Oklahoma corporation. Versa-Tech had done work for Wilmsmeyer before. Its services consisted of construction and installation of a decorative stone and rock facade on the building in question. Versa-Tech commenced work on about May 1, 1974 and completed their task on about June 21, 1974. Also hired to work on the building were five laborers from Oklahoma.[2] They had also worked for Wilmsmeyer on previous occasions. Their services commenced and terminated at roughly the same time as those provided by Versa-Tech. The laborers did carpentry work inside the building and also installed metal laths and felt paper as preparatory work to Versa-Tech's installation of the rock facade.

A variety of other contractors were solicited to make various improvements during this same time frame. At this time George Tarver was renting two offices on the second floor of the building for his construction business, as was his right under the contract for deed. He was aware that these improvements were being made and on occasion carried on conversations with the contractors. At no time, however, did he advise the contractors or post any notice that the improvements were not being made at the instance of or with the consent or authorization of either him or his wife.

As those who made the improvements became suspicious of Wilmsmeyer's financial condition they filed their respective liens with the Brown County Register of Deeds. Versa-Tech filed a lien on August 6, 1974, but only as to lots 9 and 10. A second lien was filed September 5, 1974 to include lots 9 through 12. The laborers filed their liens on August 21, 1974. On August 16, 1974 plaintiff Allen Ringgenberg, d/b/a Ringgenberg Electric, commenced this action by summons and complaint to foreclose his lien. He also sought an order of the court to include all persons interested in the property in the action, pursuant to SDCL 44-9-29.[3]

2. For the sake of convenience the five defendants in this group will be collectively referred to as laborers. They include Lloyd Moorman, Steven Moorman, Steve Longan, Terry Longan, and Sam Hatter.

3. "Upon the application of the plaintiff, or anyone claiming an interest in the property, the court may make an order requiring all persons claiming any interest in the property or lien thereon to appear in the action, either by complaint in intervention or by answer, and to set up whatever rights, claims, or interest they may have in and to the property involved in the action, within a time to be fixed by the court in its order, which shall not be less than sixty days after the first publication of the same. The order shall be published in a legal newspaper of the county once each week for at least four weeks, and if within the time specified in said order, any party shall not appear and assert his claim by proper pleading, he shall be forever barred from claiming any right, lien, or interest against the property, and judgment shall be entered in favor only of those who appear and establish their liens, claims or interests."

On August 22, 1974 an involuntary petition of bankruptcy was filed against Wilmsmeyer in federal district court in Oklahoma. On April 16, 1975 the trustee in bankruptcy rejected the contract for deed and disclaimed any interest or title to the realty in question.

The record before us is replete with answers, counterclaims and cross-claims. Suffice it to say that the court entered an order requiring all mechanics' lien claimants, the contract vendors, and the contract for deed assignees[4] to consolidate their respective causes of action with the Ringgenberg foreclosure suit. All matters, as consolidated were tried to the court on July 24 and 25, 1975.

Prior to a decision by the court, the Tarvers moved for disallowance of the mechanics' liens filed by Versa-Tech and the laborers, among others, for failure to comply with 44–9–16(7), which requires "[a]n itemized statement of the account upon which the lien is claimed." The court concluded that the mechanics' liens of Versa-Tech and the laborers were indeed defective and ordered them stricken. However, the court determined that the improvements had enhanced the value of the property $50,000.00 and therefore allowed Versa-Tech and the laborers a personal judgment against the Tarvers based upon the theory of unjust enrichment.

We deal only with that portion of the judgment that affects the parties to these appeals. Settlement agreements have precipitated the dismissal of all appeals and cross-appeals except those involving the Tarvers and Versa-Tech and the laborers. The Tarvers contend on appeal that it was error to award a personal judgment against them. By way of cross-appeal Versa-Tech and the laborers dispute the disallowance of their liens. We will address the question involving the sufficiency of the lien statements first.

It was the opinion of the trial court that our decision in *Crescent Electric Supply Co. v. Nerison,* S.D., 232 N.W.2d 76 (1975) mandated the rejection of the mechanics' lien filed by Versa-Tech and the laborers. In *Crescent* we held that the mechanics' lien statute in question, SDCL 44–9–16, was entitled to liberal construction, but went on to hold that substantial compliance with the statute was nonetheless required. We sought to avoid a construction so liberal that it would render the plain meaning of the statutory language nugatory.

■ The statement furnished pursuant to SDCL 44–9–16(7) in *Crescent* consisted simply of a list of dates, amounts, and folio numbers with no reference to what type of material was supplied, how much material was involved, or for what purpose the goods were sold. Such statement was not sufficiently itemized to notify an ordinarily intelligent and careful man what work was actually accomplished on the property in question. Substantial compliance with the statute is therefore required to protect others with an interest in the property from fraud and imposition. See *J. R. Meade Co. v. Forward Construction Co.,* Mo.App., 526 S.W.2d 21 (1975); *Continental Steel Corp. v. Sugarman,* 266 Md. 541, 295 A.2d 493 (1972); see also *Schubloom v. Donavon & Associates, Inc.,* S.D., 241 N.W.2d 710 (1976); *Laird-Norton Co. v. Hopkins,* 6 S.D. 217, 60 N.W. 857 (1894).

■ The "itemized statement" furnished by Versa-Tech does not suffer from the deficiencies noted in *Crescent;* we find that the statement furnished substantially complies with the statute and is therefore valid. The statement that the trial court found insufficient read in pertinent part as follows:

". . . such amount is due and owing to the claimant for labor performed and material for the following improvements for which the same was done or supplied

---

4. The Contract for Deed was assigned to the First National Bank of the Black Hills and was duly recorded on June 12, 1974. This assignment was by Wilmsmeyer. On July 10, 1974 another assignment of the same Contract for Deed was made to the Montana Bank of Cascade County, Montana, this time by the trustee of the Wilmsmeyer trust. It was recorded July 22, 1974.

to wit: . . . all inside and outside stone work and design and constructing a man-made concrete-rock facade; inside and outside stone siding and work. On the building described above, inside work on south wall; outside work on the south and east fronts."

It is true that such statement does not specifically itemize the number of rocks or amount of cement used to construct the rock facade. Neither does it detail the amount of labor performed and at what hourly wage. That does not dictate the invalidity of this particular statement, however. We should not decide substantial compliance in a vacuum. Care should be taken to consider the nature of the business involved. Versa-Tech contracts to do an entire job based on their examination of the premises. This includes manufacturing, transporting, designing, and applying the stone and rock facade. There is no separate agreement made as to either material or labor; Versa-Tech sells a result at a certain price. In such instances it is not necessary, even if possible, to furnish further detail as to materials or labor. The information provided is sufficient to allow the owner to ascertain and verify the correctness of the lien. "Where the work is contracted for as an entirety for a specific amount, . . . all the information is given that is needed or can reasonably be required." *Taylor v. Netherwood,* 91 Va. 88, 20 S.E. 888, 890 (1895). See also *King v. Smith,* 42 Minn. 286, 44 N.W. 65 (1890).

It appeared at trial that Versa-Tech had erroneously included a charge for sandblasting the sides on the building. That work, although preparatory to their installation of the rock facade, was actually done by another lien claimant. Where a lienor intentionally and willfully files a false or exaggerated claim, the law will not assist him in enforcing his lien. *Bohn Mfg. Co. v. Keenan,* 15 S.D. 377, 89 N.W. 1009 (1902). A claim is not intentionally or willfully false, however, if the mistakes were honestly made. *Wittrock v. Hall,* 51 S.D. 39, 211 N.W. 801 (1927). Where a lien claim is grossly exaggerated, the claimant has the burden of establishing that the mistake was made in good faith. *E. S. Gaynor Lumber Co. v. Morrison,* 75 S.D. 132, 60 N.W.2d 83 (1953). Versa-Tech has met that burden; the record establishes, by the testimony of the company's president, that the mistake was honestly made. See *J. R. Meade Co. v. Forward Construction Co.,* Mo.App., 526 S.W.2d 21 (1975). We find that Versa-Tech has a valid mechanics' lien and reverse the findings of the trial court as "clearly erroneous" to that extent.[5]

The liens filed by the laborers stand on different footing, however. The pertinent part of their lien statements described the work done by them as "[c]onstructing a man-made, concrete-rock facade; inside and outside stone siding and wall." Attached as part of the lien statements were affidavits by the laborers setting out the dates worked, the number of hours worked, and the hourly wage. The trial court, again relying on *Crescent,* concluded that this was not a sufficient itemization to constitute substantial compliance with SDCL 44–9–16(7). We do not address that issue, however, because we believe the objection raised by the Tarvers goes to the adequacy of the description of the improvements actually made. Such matters are governed by SDCL 44–9–16(2).

The statute provides that the lien statement shall set forth for what improvement the labor and materials was done or provided.[6] The claimant, while entitled to a liberal construction of this statutory language, must substantially comply with the requirement in order to avail himself to the protection of the mechanics' lien provisions. *Crescent Electric Supply Co. v. Nerison,*

---

5. Pursuant to the findings of the trial court the lien would take priority over the vendor's lien by virtue of SDCL 44–9–3, and would therefore be satisfied pursuant to the judgment in the same manner as were other valid mechanics' liens.

6. SDCL 44–9–16(2) provides:

"(2) That such amount is due and owing to the claimant for labor performed, or for skill, services, material, or machinery furnished, and for what improvement the same was done or supplied;"

*supra.* The description of the improvement made by the laborers is not in substantial compliance with the notice requirements of SDCL 44–9–16(2) in that it does not sufficiently notify an ordinarily intelligent and careful man what improvement was made by these laborers. See *Schubloom v. Donavon & Associates, Inc., supra.*

It appears from the record that the only work performed by the laborers in connection with construction of the rock facade was the installation of felt paper and metal laths in preparation for the actual construction of the rock facade by Versa-Tech. The great majority of their work consisted of carpentry work inside the building—constructing partitions, lowering a ceiling, and installation of panelling. Such a gross misstatement of the work done requires that the laborers show the exercise of good faith in describing the work actually done by them. *E. S. Gaynor Lumber Co. v. Morrison, supra.* They have not met that burden in this instance and their liens must therefore fall.

■ This brings us to the question of the propriety of the personal judgment granted to the laborers against the Tarvers. This recovery was based on the theory of unjust enrichment. The Tarvers contend that a personal judgment is prohibited by the language of SDCL 44–9–3:

"Whenever land is sold under an executory contract authorizing the vendee to improve the same, and such contract is forfeited or surrendered after liens have attached by reason of such improvements, the title of the vendor shall be subject thereto, but he shall not be personally liable if the contract was made in good faith."

We conclude that appellants read the prohibition of the statute too broadly. The statute by its own terms prohibits a valid lien for improvements from attaching as a personal liability of the vendor; it makes clear that such liens attach to the vendor's title. There is no blanket prohibition holding the vendor free from personal liability in all instances. This statute has no applicability where the claimant does not have a valid

lien. See *Keeley Lumber and Coal Co. v. Dunker,* 76 S.D. 281, 77 N.W.2d 689 (1956).

■ While some jurisdictions conclude that failure of the claimant to avail himself to the mechanics' lien statute forecloses the possibility of a personal judgment in similar circumstances, see, e. g., *Guldberg v. Greenfield,* 259 Iowa 873, 146 N.W.2d 298 (1966) and *Utschig v. McClone,* 16 Wis.2d 506, 114 N.W.2d 854, South Dakota has a statute that rejects that result. SDCL 44–9–49 provides:

"No failure to comply with any of the provisions of this chapter shall affect the right of any person to recover, in an ordinary civil action, from the party with whom he has contracted."

We find that this statute permits the laborers, who have failed to substantially comply with SDCL 44–9–16(2), to proceed against the Tarvers on a theory of unjust enrichment. The sole question remaining is whether they have established that they are entitled to recovery under that theory.

■ When a benefit is conferred upon a party by another and the former recognizes and accepts that benefit under circumstances where it is inequitable for him to do so without payment for the benefit, the court will imply a contract between those parties regardless of their assent thereto. *Thurston v. Cedric Sanders Co.,* 80 S.D. 426, 125 N.W.2d 496 (1963); *St. John's First Lutheran Church v. Storsteen,* 77 S.D. 33, 84 N.W.2d 725 (1957); see also *Paschall's Inc. v. Dozier,* 219 Tenn. 45, 407 S.W.2d 150 (1966). The contract implied in law is in reality a legal fiction applied for reasons of doing justice between the parties. To prevail here, the laborers must show that the laborers conferred a benefit upon the Tarvers, that the Tarvers were cognizant of that benefit and that to allow the Tarvers to retain that benefit without compensation would unjustly enrich them. The trial court made those findings and our examination of the evidence presented leads us to conclude that those findings are not "clearly erroneous." SDCL 15–6–52(a).

Accordingly that portion of the judgment allowing the laborers to recover a personal

judgment from the Tarvers is affirmed. That portion of the judgment holding that the mechanics' lien filed by Versa-Tech was invalid is reversed and remanded for entry of judgment not inconsistent with this opinion.[7]

DUNN, C. J., concurs.

WOLLMAN, J., concurs specially.

ZASTROW, J., concurs in part and dissents in part.

WINANS, Retired Justice, sitting as a member of the court.

PORTER and MORGAN, JJ., not having been members of the court at the time this case was orally argued, did not participate.

WOLLMAN, Justice (concurring specially).

Although I agree that Versa-Tech's lien substantially complied with the statute and thus was sufficient, I would also hold that the laborers' liens were in substantial compliance with the statute. Mr. Moorman testified that he and the other laborers tore the awning off the front of the building and put up plywood so that Versa-Tech's employees could nail up the laths to which the rock facade was attached. Granted that the bulk of the work done by the laborers consisted of putting up paneling and doing other carpentry work inside the building, I would hold that because at least a portion of their work involved installing the underlying support for the rock facade, their lien statements should not be struck down as being insufficient, there being no evidence in the record of bad faith on their part.

ZASTROW, Justice (concurring in part and dissenting in part).

I concur in the majority opinion's finding that the lien statement of Versa-Tech, Inc. was sufficiently itemized to comply with SDCL 44–9–16(7), and that the lien statement of the laborers was a misstatement of their work and failed to comply with SDCL 44–9–16(7).

However, I cannot agree that the laborers are entitled to recover under SDCL 44–9–49 on a theory of unjust enrichment. SDCL 44–9–49 allows the laborers to recover "from the party with whom he has contracted," that is, Wilmsmeyer, not Tarvers.

---

7. The trial court ruled from the bench that because Mr. Tarver was himself a contractor, the claims of Versa-Tech and the laborers would be reduced by 25%. We find no basis in law or equity for such a reduction and therefore conclude it was error to reduce the claims by that amount.